■ In the Matter of MARCHETTA WILLIAMS, Petitioner, v NEW YORK STATE JUSTICE CENTER FOR THE PROTECTION OF PEOPLE WITH SPECIAL NEEDS et al., Respondents. [57 NYS3d 238]—

Egan Jr., J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent Justice Center for the Protection of People with Special Needs denying petitioner's request to amend and seal a report of neglect.

As discussed in greater detail in this Court's decision in *Matter of Anonymous v Molik* (141 AD3d 162, 164-165 [2016], *lv granted* 29 NY3d 902 [2017]), the Legislature enacted the Protection of People with Special Needs Act (Executive Law § 550 *et seq.*) in 2012, which, in turn, created respondent Justice Center for the Protection of People with Special Needs

(hereinafter the Justice Center) (*see* Executive Law § 551). The Justice Center, insofar as is relevant here, is empowered to investigate and respond to allegations of neglect of persons with cognitive or physical disabilities who receive care from licensed facilities (*see* Executive Law §§ 551-553, 557, 562; Social Services Law § 493).

Petitioner in the instant proceeding is a licensed practical nurse employed by the Elgin IRA, a residential center (hereinafter the facility) licensed by the Office of People with Developmental Disabilities (hereinafter OPWDD). In July 2013, the Justice Center received a report that petitioner "committed neglect when [petitioner] operated a service recipient's power wheelchair without securing her foot straps and while pushing a [Hoyer] lift motor, resulting in the service recipient catching her foot in a doorway and fracturing her patella." Following an investigation by OPWDD (*see* 14 NYCRR 624.5 [h]), the Justice Center substantiated the allegations of neglect and the Administrative Appeals Unit denied petitioner's request for an amendment of the substantiated report, finding that, based upon a preponderance of the evidence, petitioner committed a category three act of neglect (*see* Social Services Law §§ 493 [3] [a] [i]; [4] [c]; 494 [1] [a]; 14 NYCRR 624.5 [j] [1] [i]; 700.4-700.5). After petitioner exercised her right to a hearing (*see* Social Services Law § 494; 14 NYCRR 700.6 [a]), the Justice Center adopted the Administrative Law Judge's findings and recommended decision and denied petitioner's request to amend and seal the substantiated report (*see* 14 NYCRR 700.9-700.13 [a]).[1] Petitioner thereafter commenced this CPLR article 78 proceeding, subsequently transferred to this Court, to annul the Justice Center's determination—alleging that it is not supported by substantial evidence (*see* CPLR 7804 [g]).

Social Services Law § 493 (4) creates, insofar as is relevant here, three categories of substantiated reports of abuse or neglect perpetrated by an identified custodian.[2] The particular category designation "depend[s] on the nature and severity of the conduct, and each [category] carries with it different conse-

---

1. It is noted that, in accordance with 14 NYCRR 700.13 (a), the Director of the Administrative Hearings Unit, as the designee of the Justice Center's Executive Director, memorialized the final determination in a written order.

2. Category four applies to "conditions at a facility or provider agency that expose service recipients to harm or risk of harm where staff culpability is mitigated by systemic problems," and instances in which "the perpetrator of . . . abuse or neglect cannot be identified" (Social Services Law § 493 [4] [d]). Although petitioner initially alleged that the substantiated report should have been categorized in this regard, she has since withdrawn her claim and, as such, we deem any argument on this point to be abandoned (*see Matter of*

quences" (*Matter of Anonymous v Molik*, 141 AD3d at 165). Category one is limited to a specified list of "serious physical abuse, sexual abuse or other serious conduct" (Social Services Law § 493 [4] [a]), and category two contains conduct that "seriously endangers the health, safety or welfare of a service recipient" (Social Services Law § 493 [4] [b]). In contrast, category three encompasses all other acts of abuse or neglect that do not rise to the level of conduct as "described in categories one and two" (Social Services Law § 493 [4] [c]).

At an administrative hearing to determine whether a report of category three neglect is substantiated, the Justice Center is required to establish, by a preponderance of the evidence, that the petitioner's alleged conduct occurred, and that it constituted an "action, inaction or lack of attention" that breached his or her duty and resulted in a "physical injury" to the service recipient (Social Services Law § 488 [1] [h]; *see* Social Services Law § 493 [3] [a] [i]; [4] [c]; 14 NYCRR 700.6 [b]; *Matter of Anonymous v Molik*, 141 AD3d at 165). Upon review, as with any administrative determination following an evidentiary hearing required by law, the Justice Center's category three neglect determination must be supported by substantial evidence (*see* CPLR 7803 [4]; *see also Matter of Mitchell [Nation Co. Ltd Partners—Commissioner of Labor]*, 145 AD3d 1404, 1406 [2016]; *Matter of Chinnery v Carrion*, 134 AD3d 703, 704 [2015]).

As a licensed practical nurse, petitioner's duties at the facility included safely transporting the service recipient from her bedroom to the bathroom while utilizing a lift (*see generally* Education Law § 6902 [2]; 8 NYCRR 64.1 [b]). Petitioner was aware that the service recipient had medical conditions pertaining to "bone degenerati[on] and deteriorati[on]," and that the lift employed to carry the service recipient tended to "roll" if not properly secured because the facility "isn't level." Despite knowledge of the foregoing, it is undisputed that petitioner was simultaneously operating the wheelchair and the 18-pound lift when the service recipient impacted the doorframe. Specifically, after she positioned the service recipient's electric wheelchair in front of the bathroom doorway, petitioner stood in front of the wheelchair, connected the lift to its ceiling tracks, pushed the lift forward, operated the wheelchair's hand controller in a forward direction and observed the service recipient's foot become "caught in the door." A chief physical therapist for OPWDD opined that this

*Wechsler v New York State Adirondack Park Agency*, 85 AD3d 1378, 1379 n 2 [2011]).

practice was "very unsafe" and "extremely likely" to have resulted in the service recipient's patellar fracture.

Petitioner's assertion that the Justice Center's determination is not supported by substantial evidence because certain of the proof adduced at the hearing constituted hearsay is unavailing, as "it is axiomatic that hearsay is admissible in administrative hearings and may be used to support a finding of substantial evidence" (*Matter of Hoffman v Village of Sidney*, 252 AD2d 844, 845 [1998]; *see Matter of Gray v Adduci*, 73 NY2d 741, 742 [1988]; *Matter of Parris v Shah*, 127 AD3d 515, 515 [2015]). To the extent that the record contains conflicting proof as to whether the service recipient's foot and/or knee struck the door jamb, the fact remains that there was testimony establishing that petitioner engaged in category three neglect by failing to properly secure the service recipient in her wheelchair while simultaneously operating the lift and that the service recipient suffered a fractured patella as a result thereof (*see* Social Services Law §§ 488 [1] [h]; 493 [4] [c]; *cf. Matter of Jones v Axelrod*, 118 AD2d 1011, 1011-1012 [1986]). Accordingly, we are satisfied that the causation element supporting the service recipient's physical injury was established, and the Justice Center's determination is supported by substantial evidence. Petitioner's remaining contentions, to the extent not specifically addressed, have been examined and found to be lacking in merit.

McCarthy, J.P., Lynch, Devine and Clark, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.